<u>No. 25-14171</u>

# <u>UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT</u>

PRESTON DAMSKY, A LAW STUDENT AT
THE UNIVERSITY OF FLORIDA LEVIN COLLEGE OF LAW,
Plaintiff-Appellee,
v.
CHRIS SUMMERLIN, IN HIS OFFICIAL CAPACITY AS THE DEAN
OF STUDENTS OF THE UNIVERSITY OF FLORIDA,
Defendant-Appellant.

On Appeal from the United States District Court for the Northern
District of Florida
No. 1:25-cv-00275-AW-MAF, Hon. Allen C. Winsor

## **APPELLEE'S RESPONSE BRIEF**

ANTHONY F. SABATINI
FL BAR No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
MOUNT DORA, FL 32757
T: (352)-455-2928

*Counsel for Appellee*

1

**CERTIFICATE OF INTERESTED PERSONS AND**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, Plaintiff-Appellee identifies all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1. ACLU Foundation-New York

2. American Civil Liberties Union

3. Bartolomucci, H. Christopher

4. Damsky, Preston

5. Dean of Students of the University of Florida

6. Fitzpatrick, Martin A.

7. Miller, Justin A.

8. Sabatini, Anthony F.

9. SABATINI LAW FIRM PA

10. SCHAERR JAFFE LLP

11. Smith, Brande S.

12. Summerlin, Chris

13. Sykes, Emerson J.

14. University of Florida

15.     Winsor, Allen C.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Defendant-Appellant states that no publicly traded company or corporation has an interest in the outcome of this appeal, and no non-governmental corporation is a party to this appeal.

/s/ *Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
**anthony@sabatinilegal.com**
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
MOUNT DORA, FL 32757
T: (352)-455-2928

**Dated**: March 11, 2026.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee requests oral argument.  Oral argument would allow for a clear explanation of the appropriate weight that Appellee contends should be given to facts in the record below.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................2

STATEMENT REGARDING ORAL ARGUMENT .............................3

TABLE OF AUTHORITIES ........................................................4

JURISDICTIONAL STATEMENT ........................................... 5

INTRODUCTION ..................................................... 7

STATEMENT OF THE ISSUES ............................................. 8

STATEMENT OF THE CASE .............................................. 9

STANDARDS OF REVIEW .................................................10

**SUMMARY OF ARGUMENT** .................................................12

**ARGUMENT** ..................................................................14

I. Damsky Is Likely to Prevail on the Merits…………….....................15

II. Damsky Has Shown Irreparable Harm………………………..20

III. Balancing of Equities Favors Damsky……………..……………22

CONCLUSION ................................................................23

CERTIFICATE OF COMPLIANCE ......................................24

## TABLE OF AUTHORITIES

**Cases Page(s)**

*Ashcroft v. ACLU,*

542 U.S. 656 (2004) …………………….…………………………13

*Boim v. Fulton Cnty. Sch. Dist.,*

494 F.3d 978 (11th Cir. 2007) …………………….…………17

*Cate v. Oldham,*

707 F.2d 1176, 1188 (11th Cir. 1983)………………….…………23

*Counterman v. Colorado*

600 U.S. 66, 72, 74 (2023)………………………………………*.13*

*Doe v. Valencia Coll.*

*903 F.3d 1220, 1229 (11th Cir. 2018)………………………..18*

*Keister v. Bell*

879 F.3d 1282, 1287 (11th Cir. 2018)………………………...12

*Leroy v. Livingston Manor Central School District*

F.4th ---, 2025 WL 3029421 (2d Cir. Oct. 30, 2025)………………15

*Speech First v. Cartwright,*

32 F.4th 1110, 1127n.6 (11th Cir. 2022) …………………..……14

*Tinker v. Des Moines Independent Community School District*

393 U.S. 503, 513 (1969)………………………………………..11

**Other:**

UF Regulation 4.040 §4(c), (k)………………………..11

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 based on federal questions arising under the Constitution of the United States and Plaintiff's alleged deprivation of federal rights under color of state law. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because this is an appeal from an interlocutory order granting a preliminary injunction on November 24, 2025. Doc. 38 at 28. The notice of appeal was filed on November 25, 2025. Doc. 41.

## INTRODUCTION

The district court correctly granted preliminary injunctive relief restoring Appellee to normal standing at UF Law because the record clearly showed that the University's disciplinary action was premised on protected speech and an erroneous expansion of school-speech authority to off-campus, public social-media commentary that was not targeted or directed to any person or group on UF Law's campus.

Damsky did not cause a substantial disruption.  Nor did he make a threat.  At a law school of roughly 700 students, an off-campus tweet made during spring break, by a student with roughly 30 "X" followers—none of which attended UF—caused no substantial disruption at all.

The Appellant recasts tweets—that view people read—as "threats" and "material disruption." That's a stretch.

The administrative record shows the University tolerated Appellee's expression until public political backlash to his controversial expression intensified, and then, caving to public political pressure, UF imposed sweeping sanctions without establishing that Damsky's speech fell into any unprotected category or that Tinker's narrow standard was satisfied.

Appellant's arguments fail for four principal reasons. First, Appellant has not shown a likelihood of success on the merits because the record does not demonstrate a "true threat," and the University's application of its conduct code to off-campus speech exceeds Tinker's bounds and conflates protected controversy with actionable disruption.  Second, the asserted disruptions reflect administrative choices and listener reactions—not Appellee's unlawful conduct.  Third, Appellee demonstrated irreparable harm

8

from ongoing exclusion and loss of educational opportunity absent injunctive relief. Fourth, the equities and public interest favor preserving constitutional protections for student speech while this case proceeds.

For these reasons, the Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that Appellee is substantially likely to succeed on the merits because his social-media posts and seminar writings are protected speech and not true threats or properly proscribable under Tinker.

2. Whether the district court correctly found irreparable harm, that the balance of equities favored Appellee, and that the public interest supports an injunction vindicating First Amendment rights.

## STATEMENT OF THE CASE

### A. District Court Proceedings and Findings

The district court granted a preliminary injunction reinstating Appellee after concluding that the University expelled him for protected speech and failed to show his speech was a true threat or otherwise proscribable; it further found irreparable injury, favorable

balance of harms, and that an injunction serves the public interest. Doc. 1.

The order clearly explains that Appellee was expelled after two seminar papers and two X posts, that the University cited Student Conduct Code provisions for Disruptive Conduct and Harassment, and that neither side sought an evidentiary hearing; the court relied on affidavits and the administrative transcript. Both parties chose not to have an evidentiary hearing.  The court found the X posts did not constitute true threats, emphasizing the contextual reference to Noel Ignatiev and the absence of any serious expression of intent to commit unlawful violence, and further concluded the posts were not reasonably construed as school-directed threats under Tinker.

On irreparable harm, the court concluded Appellee is being directly penalized for his speech and lacks monetary recourse due to Eleventh Amendment immunity, and it rejected any undue-delay argument. The court held that vindicating First Amendment rights serves the public interest and that the University lacks an interest in enforcing unconstitutional penalties on speech.

## B. University Code Charges and Sanction

The University charged Appellee with "Disruptive Conduct" and "Harassment" under UF Regulation 4.040 §4(c), (k), which on

their face *exclude conduct "protected by the First Amendment,"*

culminating in expulsion after a July 28, 2025 hearing and

administrative appeal denial on October 9, 2025.  Doc. 38.

**C. The Speech at Issue**

On March 21, 2025, Appellee posted on X that:

> My position on Jews is simple: whatever Harvard professor
> Noel Ignatiev meant by his call to "abolish the White race by
> any means necessary" is what I think must be done with Jews.
> Jews must be abolished by any means necessary.

Doc. 17.

This obtuse, non-literal, "trolling" post, aimed at advocates

"anti-white" racism, was not viewed by any UF students until one

week after it was posted.

**D. University Response and Asserted Effects**

The University imposed an interim suspension on April 2, 2025

and expelled him on August 8, 2025.  Doc. 17-1.  The University

appealed thereafter.

**SUMMARY OF ARGUMENT**

The injunction should be affirmed. The University is unlikely to

prevail because: (1) the posts, read in context, are not "true threats,"

and the University's own code recognizes protected speech; (2)

Tinker does not authorize extreme regulation of off-campus public

speech based solely on audience reaction or administrative countermeasures; (3) Appellee established irreparable harm from exclusion and delayed education; and (4) the equities and public interest favor safeguarding constitutional speech and preventing viewpoint-based punishment.

**STANDARD OF REVIEW**

Appellant bears the burden to show the district court abused its discretion in granting a preliminary injunction. The district court's legal conclusions are reviewed de novo and factual findings for clear error. Appellee agrees that constitutional facts are reviewed de novo, but the record here does not support Appellant's merits arguments. *Keister v. Bell,* 879 F.3d 1282, 1287 (11th Cir. 2018).

**ARGUMENT**

**I. Appellee Is Likely To Succeed On The Merits.**

**A. The University's theory of "true threats" fails under the record.**

Damsky has shown a substantial likelihood of success on the merits, first, because Appellant does not dispute the fact that it expelled Damsky based on his speech.  It is important to note at the

outset that UF's own policies prohibit it from punishing Damsky for anything other than unlawful speech.  In other words, UF limited it's punishment to statements it found to be unlawful, i.e., threats.  See UF Regulation 4.040 §4.  The University argues that Damsky's X posts were not protected because they were either "true threats" or constituted substantially disruptive school-directed threats.

It is the University's burden to justify its decision to punish Damsky for his speech. *Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Ed.,* --- F.4th ---, 2025 WL 3102072, at *11 (6th Cir. Nov. 6, 2025) (citing *Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004)).  It has failed to do so.

To constitute a threat under *Counterman*, a communication must be a "'serious expression" conveying that a speaker means to "commit an act of unlawful violence."  *Counterman v. Colorado*, 600 U.S. 66, 72, 74 (2023)(quoting Black, 538 U.S. at 359).

Damsky's obtuse, non-literal, "trolling" post, aimed at advocates "anti-white" racism, was not viewed by any UF students until one week after it was posted.  Further, never once did Damsky state that he will engage in violence or an unlawful act, nor did he incite violence.  Had Damsky advocated for the use of force, even that would be protected, unless "such advocacy is directed to inciting

or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). No reasonable interpretation of his actions suggests that he did so.

UF's "true threats" position is untenable. The operative speech was public commentary on matters of public concern, posted to his X account (which had roughly 30 followers), invoking a debated academic phrase and engaging in argumentative rhetoric.  The University's own code excludes protected speech from its harassment policy, and the University cannot successfully argue that Damsky's speech was materially disruptive.

Although Damsky's off-campus speech was protected, this Court has recently recognized "it's not at all clear that Tinker's more lenient standard applies in the university—as opposed to the elementary- and secondary-school—setting. *Speech First v. Cartwright*, 32 F.4th 1110, 1127n.6 (11th Cir. 2022).  Never once did UF identify a direct, unconditional, and specific threat of unlawful violence to any identified person or student.

Appellee's X post focused on academic Noel Ignatiev's "abolition" language and did not contain an explicit commitment to imminent unlawful violence; the subsequent exchange reflected rhetorical disputation rather than a direct threat, and the University

relies on the professor's interpretation and Appellee's failure to say "no" as the linchpin of its "threat" theory.

That theory distorts the objective-content inquiry by elevating a listener's fear and Appellee's argumentative reply into a prohibition on controversial, even offensive, speech. The record shows no demand, deadline, conditional menace, or directive toward an imminent unlawful act—features that distinguish true threats from protected hyperbole. The University's reliance on audience alarm and subsequent security choices cannot transform rhetorical excess into an unprotected threat.

**B. Tinker, diminished based on the circumstance here, does not reach Appellee's off-campus public speech, and Appellant's "disruption" showing is legally insufficient.**

Appellant leans on Tinker's "material disruption" test but extends it beyond its limits.  UF must show that Damsky's speech constituted a school-directed threat, but because it cannot, the University is left without a strong Tinker argument.

Tinker is the only basis UF cites to discipline Damsky for his speech. The entirety of its disruption argument is tied to the purported threat; UF can't find grounds for "disruption" independent from its threat claim.

Damsky is likely to be successful because Tinker's relevant question is whether there is "disorder or disturbance on the part of the" *speaker*, as evinced by the Second Circuit in *Leroy v. Livingston Manor Central School District*. --- F.4th ---, 2025 WL 3029421 (2d Cir. Oct. 30, 2025).

In *Leroy v. Livingston*, cited in the order below, a high school student's social media post generated community outcry and demonstrations. The court there correctly found that Tinker's relevant question is focused on "disorder or disturbance on the part of the" speaker. *Id*. at 8. Furthermore, a speaker's free speech rights cannot legally be tied to "to the reaction that speech garners from upset or angry listeners." Disruption contingent on the audience cannot be squared with either Tinker or the First Amendment.

**C. Damsky's speech was off-campus, directed to the general public, and only later drew responses from a law professor and community members.**

Appellee posted on X outside the school environment; the asserted "school nexus" is a later public exchange with a professor and University members' awareness of his account.

Damsky's statement that, "My position on Jews is simple: . . . Jews must be abolished by any means necessary," under any rational

reading, includes no indication that he will act on this assertion.  It is the assertion of a view—a controversial one—but it is a view, nonetheless.  And that view is aimed at no person on campus. Moreover, Damsky's post was *not* simply that "Jews must be abolished by any means necessary."  His full statement was this:

> My position on Jews is simple: whatever Harvard professor Noel Ignatiev meant by his call to "abolish the White race by any means necessary" is what I think must be done with Jews. Jews must be abolished by any means necessary.

Read in context, the post was equating Damsky's view that "Jews must be abolished" to the view of a Harvard professor.  This context further undermines any suggestion that the post was a "serious expression" that Damsky would harm others.  Would a reasonable person really assume Ignatiev was calling for genocide? Doubtfully.  Under *Counterman*, whether Damsky's posts constituted a "serious expression" that he meant "to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74.  Clearly, he had no expression, based upon the syntax of the X post.

The disruptions Appellant cites are predominantly audience reaction (fear, avoidance, difficulty concentrating) and administrative and policing measures the University chose to implement.

17

As noted in *Morse v. Frederick,* it is the "special characteristics" of a school environment that allow schools to regulate certain categories of expressions inappropriate for that setting, including, for example, lewd speech and speech promoting drug use. See *Morse v. Frederick,* 551 U.S. 393, 404-05, 408 (2007).  As noted in the Order below, an analysis of each of those special characteristics favor Damsky.

**D. Cases that have allowed for discipline based on "threats" have been limited to language *directed* at a person or groups.**

In *Boim v. Fulton County School District*, in which the Eleventh Circuit upheld a student's suspension based on her speech. 494 F.3d 978, 980-81 (11th Cir. 2007), the threat was directed at a person, namely, a teacher.  This case is quite different.  Damsky directed speech no one.  Furthermore, *Boim* was an on campus school threat; Damsky was off campus.  Such also was the case in *Doe v. Valencia*, where extremely targeted speech and "persistent harassment" was at issue, not non targeted political speech as is the case here.  See *Doe v. Valencia Coll.*, 903 F.3d 1220, 1229 (11th Cir. 2018).

Furthermore, UF incorrectly argues that it's determinations of what is a threat are owed deference.  That is not the case.  Courts assess whether a reading of language purporting to be a threat is a

was "a reasonable one."; it is still the province of the Court to "to determine whether a reasonable observer could interpret student speech as lewd, profane, vulgar, or offensive."  B.*H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 308-10 (3d Cir. 2013).

**E. Appellant's reliance on prior-year controversies to color the 2025 posts is misplaced.**

The University previously declined to discipline Appellee for law school writings it deemed "abstract and academic in nature," and it had "tolerated and navigated" his speech despite upset. That prior tolerance cannot retroactively strip protection from later off-campus public speech in order to justify severe discipline.

The Interim Dean testified the University had defended Appellee's right to express extreme views until March 2025 and earlier concluded his seminar writings were not threatening in their academic context .

Tinker requires a material disruption caused by the speech at issue, not by cumulative disapproval of a speaker's viewpoint. The record shows the University pivoted when public pressure and fear rose—not when Appellee crossed any constitutionally recognized line.

**F. The school-aimed "threat" theory is especially weak.**

19

Appellee's words did not target the professor or any individual by name, time, or place, nor did they reference the campus or any school event. The "school connection" cited by Appellant is the professor's decision to engage Appellee online and her interpretation of his reply.

The University's materials identify the professor's public query and Appellee's response as the catalyst for heightened fear and operations changes; they do not identify any direct on-campus targeting by Appellee contemporaneous with the posts . Under these facts, Appellant cannot satisfy Tinker's narrow path for disciplining off-campus speech without collapsing the standard into generalized authority to punish controversial public commentary.

**G. The University's conduct code cannot be enforced in a viewpoint-discriminatory manner.**

The University's code carves out First Amendment-protected speech. Yet the record shows discipline triggered by the viewpoint and offensive content of Appellee's public commentary. Administrative testimony repeatedly emphasizes that the "line" was crossed when speech "calling for the abolition of a group of people" upset community members.

Punishing speech because it is repugnant to many listeners is impermissible viewpoint discrimination, particularly where, as here, the University tolerated years of controversial political expression until audience backlash crested.  UF Regulation 4.040 §4(c), (k) exclude protected speech; the University's witnesses framed the "line" as threats/harassment but tied it to the rhetoric's offensiveness and community upset rather than to any direct, imminent threat .

**II. The District Court Correctly Found Irreparable Harm.**

Exclusion from the campus community and interruption of a professional education constitute irreparable harm where First Amendment violations are likely.

Appellant's suggestion that delay is compensable ignores ongoing deprivation of educational opportunities, relationships, and time-sensitive professional development tied to semesters and cohorts. The district court did not err in concluding Appellee met this factor.

Damsky has clearly established irreparable harm in the form of his lost free speech rights. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); see also, e.g., Otto v. City of Boca Raton, 981 F.3d 854, 870, (11th Cir. 2020) (noting that, "as a necessary legal

consequence of" establishing an unconstitutional "direct penalization" of speech, plaintiff established irreparable injury).

### III. The Balance of Equities and Public Interest Support the Injunction.

Maintaining constitutional protections for student speech and preventing viewpoint-based discipline serves the public interest. The University remains free to take reasonable, content-neutral safety measures while litigation proceeds; it may not extinguish protected expression. Appellant's speculative safety concerns, premised on audience fear rather than any unlawful conduct by Appellee, do not outweigh the concrete constitutional injury.

Damsky has a substantial likelihood of success on his First Amendment claim and that he is suffering continuing irreparable injury every day he remains unable to attend school because of his protected speech, an ongoing "direct penalization" of First Amendment rights.  *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983).

Because the third and fourth required elements of a preliminary injunction "merge with the public interest," and because the vindication of First Amendment rights always serves the public

interest, the motion for a stay should be denied.  *See Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1293 (11th Cir. 2021).

**CONCLUSION**

The preliminary injunction should be affirmed. The district court correctly concluded that Appellee is likely to succeed on the merits because his speech is protected, not a true threat, and not reasonably construed as a school-directed threat under Tinker; that he faces irreparable harm from ongoing penalization of protected expression; and that the equities and public interest favor safeguarding First Amendment rights.

**Dated**: March 11, 2026

Respectfully submitted,

/s/ *Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
MOUNT DORA, FL 32757
T: (352)-455-2928

Counsel for Appellee

**CERTIFICATE OF COMPLIANCE**

The foregoing Appellant's Opening Brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3594 words.
This brief also complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font and Palatino type.

/s/ *Anthony F. Sabatini*