No. 25-14171

# United States Court of Appeals for the Eleventh Circuit

PRESTON DAMSKY, A LAW STUDENT AT
THE UNIVERSITY OF FLORIDA LEVIN COLLEGE OF LAW,

*Plaintiff-Appellee,*

v.

CHRIS SUMMERLIN, IN HIS OFFICIAL CAPACITY AS
THE DEAN OF STUDENTS OF THE UNIVERSITY OF FLORIDA,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Florida
No. 1:25-cv-00275-AW-MAF, Hon. Allen C. Winsor

## APPELLANT'S REPLY BRIEF

BRANDE S. SMITH
DOWNSAARON, PLLC
200 S. Orange Avenue
Suite 2250
Orlando, FL 32801
(407) 349-3949

H. CHRISTOPHER BARTOLOMUCCI
  *Lead Counsel*
JUSTIN A. MILLER
MIRANDA CHERKAS SHERRILL
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

*Counsel for Appellant*

No. 25-14171

*Damsky v. Dean of Students of the University of Florida*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

In addition to those trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations identified in Appellant's Opening Brief, pursuant to Eleventh Circuit Rules 26.1-1 to 26.1-3, Appellant hereby certifies the following that have an interest in the outcome of this appeal:

1.　ACLU Foundation of Florida, Inc.

2.　American Civil Liberties Union Foundation

3.　American Civil Liberties Union of Florida

4.　Cherkas Sherrill, Miranda

5.　DOWNSAARON PLLC

6.　Lerman, L. Rachel

7.　The Louis D. Brandeis Center for Human Rights Under Law

8.　Tilley, Daniel B.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
*Counsel for Appellant*

C1 of C1

## TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS ..... C1

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION .............................................................................. 1

ARGUMENT .................................................................................... 1

    I.     UF Is Likely to Prevail on the Merits. ........................................ 1

    II.    Damsky Has Failed to Show Irreparable Injury. ..................... 15

    III.   The Remaining Factors Do Not Support Injunctive Relief ....... 18

CONCLUSION ................................................................................ 19

CERTIFICATE OF COMPLIANCE ..................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ............................................................. 19

*Boim v. Fulton Cnty. Sch. Dist.*
  494 F.3d 978 (11th Cir. 2007) ..................................................... 7, 8, 13

*Bouchard Transp. Co. v. Fla. Dep't Envt'l Prot.*,
  91 F.3d 1445 (11th Cir. 1996) ................................................................. 2

*Damsky v. Summerlin*,
  No. 25-14171, 2026 WL 75122
  (11th Cir. Jan. 8, 2026) .................................... 1-5, 7-13, 15, 16, 18, 19

*Doe v. Univ. of Mass.*,
  145 F.4th 158 (1st Cir. 2025) ................................................................. 6

*Doe v. Valencia College*,
  903 F.3d 1220 (11th Cir. 2018) ......................................................... 3, 5

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................... 16

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................... 13

*Healy v. James*,
  408 U.S. 169 (1972) ................................................................................. 5

*Leroy v. Livingston Manor Cent. Sch. Dist.*,
  158 F.4th 414 (2d Cir. 2025) ............................................................... 11

*Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*,
  594 U.S. 180 (2021) ................................................................................. 4

*Morse v. Frederick*,
  551 U.S. 393 (2007) ................................................................................. 9

*Ne. Fla. Ch. of Ass'n of Gen. Contractors of Am. v.*
*City of Jacksonville*, 896 F.2d 1283 (11th Cir. 1990)...........................15

*Otto v. City of Boca Raton,*
981 F.3d 854 (11th Cir. 2020) ..................................................... 16, 17

*Papish v. Bd. of Curators of Univ. of Mo.,*
410 U.S. 667 (1973) ......................................................................5

*Polk v. Soc. Sec. Admin., Comm'r,*
579 F. App'x 843 (11th Cir. 2014) ....................................................2

*Rudnikas v. Nova Se. Univ., Inc.,*
No. 21-12801, 2022 WL 17952580 (11th Cir. Dec. 27, 2022)................2

*Scott v. Sch. Bd. of Alachua Cnty.,*
324 F.3d 1246 (11th Cir. 2003) .......................................................13

*Scoville v. Bd. of Educ. Joliet Twp. High Sch. Dist. 204,*
425 F.2d 10 (7th Cir. 1970) ...............................................................6

*SEC v. MCC Int'l Corp.,*
No. 22-12281, 2024 WL 1508281 (11th Cir. Apr. 8, 2024) ...................2

*Siegel v. LePore,*
234 F.3d 1163 (11th Cir. 2000) ................................................. 15, 16

*Smith v. Fla. Agric. & Mech. Univ. Bd. of Trs.,*
No. 24-12823, 2026 WL 981236 (11th Cir. Apr. 13, 2026) ............ 15, 16

*Speech First, Inc. v. Cartwright,*
32 F.4th 1110 (11th Cir. 2022).........................................................4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
393 U.S. 503 (1969 .....................................................................2, 3

*United States v. Pettiway,*
825 F. App'x 655 (11th Cir. 2020) ....................................................2

*United States v. Segari,*
No. 25-cr-456-KKM-AAS, 2026 WL 653757
(M.D. Fla. Mar. 9, 2026)................................................................14

iii

*United States v. Ware,*
  69 F.4th 830 (11th Cir. 2023)................................................................13

*Van Arsdel v. Tex. A&M Univ.,*
  628 F.2d 344 (5th Cir. 1980) ........................................................ 15, 16

*Ward v. Polite,*
  667 F.3d 727 (6th Cir. 2012) ...............................................................6

*Widmar v. Vincent,*
  454 U.S. 263 (1981) .............................................................................5

*Williams v. Eaton,*
  443 F.2d 422 (10th Cir. 1971) ............................................................6

*Wreal, LLC v. Amazon.com, Inc.,*
  840 F.3d 1244 (11th Cir. 2016) .........................................................19

## Other Authorities

Preston Damsky
  (@preston_terry_), X (Mar. 4, 2026 at 4:06 PM)..................................17

## INTRODUCTION

The University of Florida ("UF") expelled law student Preston Damsky for upending UF Law with public social media posts that threatened and promoted extralegal violence against Jews, who make up a large part of the UF community. At a minimum, UF officials reasonably saw Damsky's posts as threatening violence on campus. The district court granted preliminary relief (Doc. 38), but this Court stayed that ruling pending appeal. *See Damsky v. Summerlin*, No. 25-14171, 2026 WL 75122 (11th Cir. Jan. 8, 2026). The motions panel held that none of the four preliminary injunction factors supported the district court's decision. Because the motions panel's analysis of those factors was correct, this Court should reverse the order granting a preliminary injunction.

## ARGUMENT

### I.     UF Is Likely to Prevail on the Merits.

The motions panel—whose decision Damsky never cites—correctly concluded that "UF has made a strong showing that it is likely to succeed on the merits[.]" *Damsky*, 2026 WL 75122, at *6. It found that "UF is likely to show that Damsky's posts materially disrupted classwork for two reasons." *Id*. at *3 (cleaned up). "First, UF students, faculty, and staff could reasonably interpret Damsky's posts as threatening violence on

UF's campus, which sparked community safety concerns." *Id*. "Second, the UF community could reasonably interpret Damsky's posts as promoting extralegal violence, and schools can regulate at least some speech that calls for illegal conduct." *Id*. Although a merits panel is not bound by a motions panel's decision, this panel should follow the earlier panel's rulings in UF's favor on the preliminary injunction factors.[1]

Damsky argues that he is the party likely to succeed on the merits. The motions panel rejected each of his arguments, and properly so.

**1.** Damsky argues that UF's "application of its conduct code to off-campus speech exceeds *Tinker*'s bounds[.]" Resp. Br. 8 (ECF No. 33) (referring to *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969)). Not so.

---

[1] *See, e.g.*, *Polk v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 843, 846 (11th Cir. 2014) (per curiam) (finding "no reason to disturb [motions panel's] ruling"); *Rudnikas v. Nova Se. Univ., Inc.*, No. 21-12801, 2022 WL 17952580, at *4 (11th Cir. Dec. 27, 2022) (per curiam) (agreeing with motions panel on preliminary injunction issue); *see also United States v. Pettiway*, 825 F. App'x 655, 656 n.1 (11th Cir. 2020) (per curiam) (declining to "revisit" motion panel's decision on issue); *SEC v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *1 (11th Cir. Apr. 8, 2024) (per curiam) (declining to "reconsider" motions panel's disposition of issue); *Bouchard Transp. Co. v. Fla. Dep't Envt'l Prot.*, 91 F.3d 1445, 1447 (11th Cir. 1996) (per curiam) (agreeing with motions panel's holding on issue).

Binding decisions confirm that student speech, if disruptive or threatening, may be proscribed even when off-campus speech is at issue. In *Tinker*, the Supreme Court held that "conduct by [a] student, *in class or out of it*, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." 393 U.S. at 513 (emphasis added).

After *Tinker*, this Court held in *Doe v. Valencia College*, 903 F.3d 1220 (11th Cir. 2018), that "[t]here is no absolute bar against schools disciplining a student for off-campus conduct that violates the rights of another student." *Id.* at 1231. The *Valencia College* court rejected a suspended student's argument that "the school was powerless to do anything about his misbehavior because he did it all while he was off campus" during "the break between summer and fall classes." *Id.* This Court wrote in *Valencia College* that "*Tinker* does not foreclose a school from regulating all off-campus conduct." *Id.*; *see also Damsky*, 2026 WL 75122, at *4 ("The fact that Damsky's speech occurred online instead of

3

on campus does not mean that UF cannot regulate the speech, particularly because there was a connection between his posts and UF.").

*Mahanoy Area School District v. B. L. ex rel. Levy*, 594 U.S. 180 (2021), is not to the contrary. In that case, which involved a student's off-campus use of social media, the Supreme Court rejected the idea that "the special characteristics that give schools additional license to regulate student speech always disappear when a school regulates speech that takes place off campus." *Id.* at 188. The Court confirmed that "[t]he school's regulatory interests remain significant in some off-campus circumstances." *Id.* And it cited "several types of off-campus behavior that may call for school regulation," including "threats aimed at teachers or other students." *Id.*; *see also Damsky*, 2026 WL 75122, at *4 (finding that "*Mahanoy* is … distinguishable").

**2.** Damsky quotes in passing this Court's dictum that "it's not at all clear that *Tinker*'s more lenient standard applies in the university—as opposed to the elementary- and secondary-school—setting." Resp. Br. 14 (quoting *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022)). The *Speech First* footnote is not a holding that *Tinker* is inapplicable at the university level. Nor could it be. Cases decided by the

4

Supreme Court and this Court confirm that *Tinker* applies to colleges and universities, *see Healy v. James*, 408 U.S. 169, 184, 189 (1972); *Widmar v. Vincent*, 454 U.S. 263, 267 n.5, 277 (1981), and graduate-level schools, *see Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 667-68 & n.3, 669-70 & n.6 (1973) (per curiam).

And this Court, "in a published decision, has applied *Tinker* in the higher education context." *Damsky*, 2026 WL 75122, at *2 n.4 (citing *Valencia College*, 903 F.3d at 1229-31). The motions panel applied *Tinker* because that case applies in the "university setting" and to a "graduate student" such as Damsky. *Id.* The motions panel observed that, "when we applied *Tinker* in the university setting in *Valencia College* we did not apply a different standard than we apply in the primary school context." *Id.* (citing *Valencia College*, 903 F.3d at 1229-31).

Damsky's *amicus* argue that "the *Tinker* [disruption] standard is not appropriate as a limitation on student speech in higher education." ACLU Br. 2 (ECF No. 36-2). But that ship has sailed. A panel of this

5

Court has no authority to overrule *Valencia College,* much less higher authority.[2]

Furthermore, the ACLU recognizes that universities may discipline students for "harassment, stalking, [and] threat[s]" and "express[es] no opinion with respect to how those standards apply to the facts of this case." *Id.* at 10 n.12. Thus, the ACLU does not quarrel with UF's decision to discipline Damsky for threatening to abolish Jews at UF "by any means necessary."

Although the ACLU's brief is styled as one in support of affirmance, its conclusion does not take a position on the proper disposition of this case. The brief ends by asking this Court, not to affirm the preliminary injunction, but to reject the use of "*Tinker*'s disruption standard as a basis to regulate" a graduate student's off-campus speech on social media. *Id.*

---

[2] Other circuits have applied *Tinker* in the higher education context. *See, e.g., Doe v. Univ. of Mass.*, 145 F.4th 158, 169-75 (1st Cir. 2025); *Ward v. Polite*, 667 F.3d 727, 732-34 (6th Cir. 2012); *Williams v. Eaton*, 443 F.2d 422, 424, 430 (10th Cir. 1971); *see also Scoville v. Bd. of Educ. Joliet Twp. High Sch. Dist. 204*, 425 F.2d 10, 13 n.5 (7th Cir. 1970) (en banc) ("[T]he relevant principles and rules apply generally to both high schools and universities."). Appellant is aware of no circuit case holding that *Tinker* does not apply in university settings. And neither Damsky's response brief nor the ACLU's *amicus* brief cites such a case.

at 21. The ACLU presumably does not argue for affirmance because it recognizes that Damsky may be disciplined for threats. *Id.* at 10 n.12.

**3.**  Damsky asserts that he "did not cause a substantial disruption. Nor did he make a threat." Resp. Br. 8. The first assertion is disproved by the overwhelming evidence that his public-facing posts did, in fact, cause substantial disruption at UF Law. *See* Opening Br. 14-25 (ECF No. 22); *see also Damsky*, 2026 WL 75122, at *5 ("Here … there is strong evidence that Damsky's speech created a substantial disruption of the school's activities."); *id.* at *6 ("UF has made a strong showing" on the merits). Damsky does not address, let alone counter, that evidence in his brief.

Damsky's naked assertion that he didn't make a threat is factually wrong; it also mistakes the legal issue. Under this Court's decision in *Boim*, there "is no First Amendment right allowing a student to knowingly make comments, whether oral or written, that *reasonably could be perceived as a threat* of school violence[.]" *Boim v. Fulton Cnty. Sch. Dist.* 494 F.3d 978, 984 (11th Cir. 2007) (emphasis added). *Accord*

7

*Damsky*, 2026 WL 75122, at *2.[3] Damsky's first post read: "[W]hat I think must be done with Jews" is "simple"—"Jews must be abolished by any means necessary." Doc. 17-3 at 4. Even in the context of Damsky's citing to Harvard professor Ignatiev, his post was reasonably perceived as threatening violence. *See Damsky*, 2026 WL 75122, at *3 ("A reasonable reader could understand Damsky's post and its use of the word 'abolish' to mean that Jews must be murdered."); *id.* ("'[A]ny means necessary' can reasonably be interpreted to include violent measures."). Damsky's exchange of public posts with Professor Lidsky, in which he did not say no when she asked whether he would murder her and her family, *see* Doc. 17-3 at 4-5—was also reasonably seen as a threat of violence against the UF community. Moreover, "in his X reply to the UF professor, Damsky affirmatively brought up genocide[.]" *Damsky*, 2026 WL 75122, at *3. "Explicitly invoking genocide in connection with his statement that 'Jews *must* be abolished' confirms the reasonableness of an interpretation that Damsky was advocating for violence." *Id.* (motions panel's emphasis).

---

[3] The motions panel noted that, although the passage quoted above went on to refer to threats "on school property during the school day," *Boim*, 494 F.3d at 984, "the fact that Damsky's speech was not made on school property during the school day does not alter our conclusion." *Damsky*, 2026 WL 75122, at *2 n.5.

Although Damsky denies that his posts *threatened* violence, he does not deny that they *promoted* violence, and that is an independent basis for disciplining him. *See id.* (citing "two reasons" why Damsky could be punished; (1) his posts were reasonably seen as "threatening violence on UF's campus" and (2) the posts were reasonably seen as "promoting extralegal violence"). "Like the school in *Morse*, UF is permitted to punish Damsky because … he made statements that were reasonably viewed as promoting illegal activity (murdering Jews)." *Id.* at *4 (citing *Morse v. Frederick*, 551 U.S. 393, 403, 408 (2007)). Although Damsky's brief mentions *Morse* (Resp. Br. 18), the motions panel's conclusion and Appellant's argument (Opening Br. 32-33, 37, 42-43, 47-49) that Damsky *promoted* extralegal violence against Jews finds no response in Damsky's brief.

**4.** Damsky callously dismisses the turmoil he caused on campus as "asserted disruptions reflect[ing] administrative choices and listener reactions[.]" Resp. Br. 8. This Court should reject his crabbed view of what qualifies as a disruption.

**a.** When a student threatens violence, other students and school administrators naturally will react and respond. Students will fear for

9

their safety and change their routines. School administrators will be similarly concerned about student safety and implement campus security measures. Such reactions and responses qualify as disruptions for *Tinker* purposes. Damsky's "posts materially disturbed some students' ability to study on campus, attend certain academic events, and focus on their course work without the distraction of taking various safety precautions to protect themselves from Damsky." *Damsky*, 2026 WL 75122, at *5. These are "disruptions" that "prevent [a university] from carrying out its educational objective." *Id.* It is also a disruption when a university must "take immediate and substantial security precautions to protect its students, faculty, and others on campus[.]" *Id.*; *see also* Opening Br. 36-37.

In short, as the motions panel found, "there is strong evidence that Damsky's speech created a substantial disruption of the school's activities. And the disruption in this case—a credible fear of targeted violence—is one of the most severe disruptions imaginable." *Damsky*, 2026 WL 75122, at *5.

**b.** One of the few cases that Damsky cites in his brief (Resp. Br. 16) is *Leroy v. Livingston Manor Central School District*, 158 F.4th 414 (2d

Cir. 2025), a Second Circuit case that the district court discussed in its preliminary injunction order (*see* Doc. 38 at 25 n.13). Damsky cites *Leroy* in connection with his fuzzy notion that *Tinker* permits regulation of student speech only if disorder or disturbance is caused by the speaker, not by the audience's reaction to the speech. But it is important to recognize that *Leroy* did not involve a threat. *See* 158 F.4th at 423 ("Leroy's post contained no threat at all[.]"). *Leroy* made clear that schools may regulate threatening speech: "The concurrence … argu[es] that 'if the speech does cause a significant reaction, and specifically if it makes students fear for their safety and thereby disrupts learning, *and* the speaker recklessly provoked just that response, he can hardly complain that he is being punished for someone else's reaction.' We do not disagree." *Id.* at 425 n.2 (quoting *id.* at 440 (Pérez, J., concurring)). Thus, *Leroy* is of no help to Damsky because the instant case, unlike *Leroy*, is about student speech threatening school violence.[4]

---

[4] As noted above, the district court discussed *Leroy* in its order. Doc. 38 at 24-25 n.13. The district court saw *Leroy* as relevant to its *Tinker* analysis *only after* it had decided that Damsky's speech was not a school-directed threat. *Id.* But, as the motions panel concluded, the district court was wrong to view Damsky's speech as not threatening members of the UF Law community. *Damsky*, 2026 WL 75122, at *3-4.

11

**5.** Damsky contends that his posts were "not targeted or directed to any person or group on UF Law's campus." Resp. Br. 7. But the motions panel correctly found that "Damsky's posts were sufficiently connected to UF." *Damsky*, 2026 WL 75122, at *4. Damsky knew when he posted "that some members of the UF community perceived him as a threat, and that community members viewed his tweets." *Id.* (cleaned up). "In addition, Damsky's speech involved a direct conversation with a UF law professor." *Id.* "Finally, his speech could be reasonably perceived as targeting members of the school community." *Id.* "There is a large and engaged Jewish community at UF and the professor Damsky exchanged posts with was Jewish." *Id.* (cleaned up). Thus, "his statement that 'Jews must be abolished by any means necessary' necessarily encompassed members of the UF community." *Id.* Damsky's brief does not engage with the motions panel's reasoned analysis.

**6.** Damsky objects that it was improper for UF to rely on "prior-year controversies to color [his] 2025 posts[.]" Resp. Br. 19 (argument heading). The motions panel correctly rejected that objection. "We can look to relevant context and prior events, not just the student speech itself, to determine how members of the UF community would reasonably

interpret Damsky's posts." *Damsky*, 2026 WL 75122, at *3 n.8 (citing *Scott v. Sch. Bd. of Alachua Cnty.*, 324 F.3d 1246, 1249 (11th Cir. 2003)). Damsky's "past statements are relevant because they inform how UF and its community would reasonably interpret his current X posts." *Id.*

7.   Damsky denies that a university's "determinations of what is a threat are owed deference," noting that courts decide whether a student's speech is reasonably viewed as a threat. Resp. Br. 18-19. But in *Boim* this Court explained that "it is imperative that school officials have the discretion and authority to deal with incidents" involving "speech reasonably construed as a threat of school violence." *Boim*, 494 F.3d at 984. And, as this Court has stated many, many times, "[d]eference is the hallmark of abuse-of-discretion review." *United States v. Ware*, 69 F.4th 830, 845 (11th Cir. 2023) (cleaned up) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)); *see also* Opening Br. 44-45; Brandeis Center Br. 22-24 (Doc. 24-2).

8.   Damsky suggests that "viewpoint discrimination" is afoot. Resp. Br. 20-21. But Damsky cites no record evidence and no authority for this suggestion. Damsky was disciplined because he made threats and caused disruption, not because of his viewpoint. *See, e.g.*, Doc. 37-3 at 456-59

13

(letter from UF Dean of Students Chris Summerlin to Damsky explaining the expulsion decision). UF tolerated Damsky's expression of his views until his speech became threatening and brought about material and substantial disruption on campus. That is the sense in which his speech crossed the line. *Cf.* Resp. Br. 20.

**9.** Damsky asserts that his "posts, read in context, are not 'true threats[.]'" Resp. Br. 11. But that is *ipse dixit*, not argument. Appellant's opening brief and Appellant's *amicus* explained why Damsky's posts were a true threat. *See* Opening Br. 52-55; Brandeis Center Br. 24-28. Damsky does not grapple with the arguments that his posts fell comfortably within the definition of a true threat.[5] Nor does he dispute that he acted recklessly, an issue that is relevant only if *mens rea* is required for a true threat in a civil case. *See* Opening Br. 54-55. This

---

[5] In a recent Florida case, the defendant was convicted of transmitting in interstate commerce a true threat to injure another person based on a TikTok video in which defendant stated, among other things, "you see someone with a MAGA hat pew pew that's what we do … it's the only way," while mimicking a firearm with her hand. *United States v. Segari*, No. 25-cr-456-KKM-AAS, 2026 WL 653757, at *8 (M.D. Fla. Mar. 9, 2026). The trial court in that case held that a reasonable jury could find from the evidence "that Segari's statements were true threats." *Id.*

Court need not reach the true threat issue if it sustains UF's expulsion of Damsky under the authority of *Tinker*, *Morse*, and *Boim*.

## II.    Damsky Has Failed to Show Irreparable Injury.

Even if Damsky were likely to prevail on the merits (which he isn't), he would still have a problem—he hasn't shown he will suffer irreparable injury absent an injunction. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam) ("[T]he absence of a substantial likelihood of irreparable injury …, standing alone, make[s] preliminary injunctive relief improper.").

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Smith v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, No. 24-12823, 2026 WL 981236, at *2 (11th Cir. Apr. 13, 2026) (per curiam) (cleaned up); *see also Ne. Fla. Ch. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Here, "if Damsky ultimately prevails, his harm—a delay in completing his legal education and obtaining a professional degree—can be remedied monetarily." *Damsky*, 2026 WL 75122, at *5 (citing *Van Arsdel v. Tex. A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980)). In *Van Arsdel*, "the old Fifth Circuit held that a preliminary injunction was improperly granted

to reinstate a former tenured professor who resigned under duress." *Smith*, 2026 WL 981236, at *2 (citing 628 F.2d at 345-46).[6] "Because reinstatement after trial, coupled with back pay, would suffice to redress his alleged wrong, the court determined that the professor didn't suffer irreparable injury." *Id.* (cleaned up). And so it is here with respect to Damsky. *See Damsky*, 2026 WL 75122, at *5. Appellant made this no-irreparable-injury argument in his opening brief (at 55-56). Damsky acknowledged the argument but cited no contrary authority in his response brief (at 21).

Damsky cites (Resp. Br. 21), *Elrod v. Burns*, 427 U.S. 347 (1976) (plurality), which advised that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373. But Damsky has no answer for the holding of *Siegel v. LePore* that irreparable injury is presumed in First Amendment cases only if there is "an imminent likelihood that pure speech will be chilled or prevented altogether." 234 F.3d at 1178. *See* Opening Br. 56.[7]

---

[6] In *Smith*, this Court applied *Van Arsdel* in the case of a former professor who alleged that her firing constituted, among other things, First Amendment retaliation. *Smith*, 2026 WL 981236, at *1, *2, *2–3.

[7] Damsky also cites *Otto v. City of Boca Raton,* 981 F.3d 854, 870 (11th Cir. 2020). *See* Resp. Br. 21-22. But *Otto* was a case about speech being

16

Here, Damsky's speech has not been chilled or prevented. *Id*. at 57-58. He does not contend otherwise. In fact, he has proudly proclaimed that he has not been chilled or prevented from speaking his mind. On June 28, 2025, Damsky posted on his X account: "I have not been silenced … And I will never be silent[.]" *Id*. at 57-58 (quoting Doc. 17-4 at 16). Those are not the words of someone whose speech has been chilled or prevented.

Damsky's expulsion from UF was based on his disruptive and threatening posts, not his antisemitic views that are relevant only for context. Despite his expulsion, Damsky's public dissemination of those antisemitic views continues unabated. As recently as March 4, 2026, he tweeted that "Jews certainly do not have to tell you how evil they are, but they very often do." Preston Damsky (@preston_terry_), X (Mar. 4, 2026 at 4:06 PM), https://x.com/preston_terry_/status/2029302462629241124. The First Amendment entitles him to hold such views—but not to make

---

prevented altogether. It involved ordinances that "*prohibit[ed]* therapists from engaging in counseling or any therapy" of a certain kind. 981 F.3d at 859 (emphasis added). To say that UF has not stopped Damsky from speaking out on social media would be quite an understatement. *See* Opening Br. 57-58.

school-directed threats or disrupt the educational experience of other students.

## III. The Remaining Factors Do Not Support Injunctive Relief.

Finally, the balance of harms and public interest factors come out, as the motions panel saw things, in Appellant's favor. *Damsky*, 2026 WL 75122, at *5-6. It is imperative that colleges and universities protect their students from violence, threats of violence, and the disruption of the learning environment caused by such threats. Paling in comparison to that compelling interest is Damsky's parochial interest in broadcasting his view that "Jews must be abolished by any means necessary," Doc. 17-3 at 4, and in following up on that comment by telling a Jewish professor questioning whether he would murder her family that "surely a genocide of all Whites would be an even greater outrage than a genocide of all Jews," *id.*

The motions panel correctly concluded that the third and fourth factors should be scored in Appellant's favor. *See Damsky*, 2026 WL 75122, at *5 ("While Damsky will face harm if we grant the stay, that harm is less severe than the harm UF would face if Damsky is reinstated."); *id.* at *6 ("There is a strong public interest in avoiding

18

disruptions to UF students' education and mitigating the threat of violence on campus."); *see also* Opening Br. 58-61. With a preliminary injunction, "UF will need to take immediate and substantial security precautions to protect its students, faculty, and others on campus, burdens which weigh heavily" against an injunction. *Damsky*, 2026 WL 75122, at *5.

In sum, Damsky has not carried his burden. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("[A] plaintiff faces … a tough road in establishing four prerequisites to obtain a preliminary injunction[.]"). None of the four factors supports granting him relief. "Failure to show any of the four factors is fatal[.]" *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## CONCLUSION

For the foregoing reasons, as well as those stated in Appellant's opening brief, the order granting a preliminary injunction should be reversed.

19

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. CHRISTOPHER BARTOLOMUCCI
  *Lead Counsel*
JUSTIN A. MILLER
MIRANDA CHERKAS SHERRILL
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

BRANDE S. SMITH
DOWNSAARON, PLLC
200 S. Orange Avenue
Suite 2250
Orlando, FL 32801
(407) 349-3949

*Counsel for Appellant*

Dated: April 15, 2026

20

## CERTIFICATE OF COMPLIANCE

The foregoing Appellant's Reply Brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,005 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

Dated: April 15, 2026

21